# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801,

          Plaintiff,

v.

REUBEN A. GUTTMAN and
GUTTMAN, BUSCHNER & BROOKS, PLLC
2000 P Street, NW
Washington, D.C. 20036,

          Defendants.

Civil No. 1:17-cv-01722

## COMPLAINT

Plaintiff Grant & Eisenhofer P.A. ("G&E" or "Plaintiff"), by and through its attorneys, Frankfurt Kurnit Klein & Selz, P.C. and Nossaman LLP, as and for its Complaint against Defendants Reuben A. Guttman ("Guttman") and Guttman, Buschner & Brooks, PLLC (the "Guttman Firm" and, with Guttman, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for breach of fiduciary duty, tortious interference with contract, unjust enrichment and for the imposition of a constructive trust against Guttman and the Guttman Firm. The gravamen of this action is: (a) while still a director of G&E in 2015, Guttman engaged in a surreptitious scheme to steal G&E's client Beverly Brown ("Ms. Brown"), for whom G&E had advanced over $7 million in legal fees and costs and with whom G&E had contracted to receive a 40% contingency fee in a False Claims Act matter in the Central District of California (the "*Celgene* Matter"); (b) Guttman achieved his treacherous goal by misleading

56132747_2

G&E into believing that, upon his departure, clients including Ms. Brown would be contacted

jointly and given a free choice of how to proceed with their matters – in fact, Guttman used

G&E's reliance on these assurances as a means to engage in extensive, secret solicitation of

G&E clients while still employed at G&E; and (c) even more egregiously, after successfully

inducing Ms. Brown to leave G&E, Guttman and the Guttman Firm – in concert with other

counsel for Ms. Brown, non-parties Bienert, Miller, and Katzman, PLC (the "Bienert Firm") and

Richard Harpootlian, P.A. (the "Harpootlian Firm") – have sought to settle the *Celgene* Matter

on behalf of Ms. Brown and, while concealing material information from G&E, seek to keep for

themselves all of the court-awarded fees and a large portion of  the $280 million settlement,

thereby reaping unwarranted profits from G&E's huge investment in the case while depriving

G&E of its proportional share of the settlement.

## THE PARTIES

2.      Plaintiff G&E is a Delaware professional association with its principal place of

business at 123 Justison Street, Wilmington, Delaware 19801.

3.      Upon information and belief, Guttman is an individual residing in State of

Maryland.

4.      Upon information and belief, the Guttman Firm is a professional corporation

incorporated in the District of Columbia and headquartered in that district.

## JURISDICTION AND VENUE

5.      Jurisdiction for Plaintiff's claim lies with the United States District Court for

the District of Columbia pursuant to 28 U.S.C. §1332(a) because the parties reside in

different states and because the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over Defendants because Defendants

reside or do business in the District of Columbia.

7.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because the parties consented in writing to resolve disputes between them in this judicial district.

8.      G&E has instituted a separate action in the Central District of California against Ms. Brown and the Bienert and Harpootlian Firms.  *See Grant & Eisenhofer, P.A. v. Brown,* 2:17-cv-05968 (C.D. Cal.).  A prior agreement requires that any lawsuit between G&E and the Defendants herein be filed in this judicial district.

## FACTS

### Guttman's Tenure at G&E

9.      G&E is a law firm with offices in Wilmington, Delaware, New York, New York, Chicago, Illinois and, until earlier this year, Washington, D.C.  G&E frequently represents relators in *qui tam* actions and plaintiffs in securities, corporate governance, false claims, antitrust, bankruptcy, consumer litigation, and other class actions.  G&E currently has 63 lawyers.

10.      Guttman joined the Firm in 2007 as senior counsel, and was made a director effective January 1, 2009.  As a director, Guttman shared in the profits of G&E.  Guttman focused his practice on the False Claims Act, complex litigation and class actions, and worked out of the Firm's Washington, D.C. office.

### Ms. Brown's Retainer Agreement with G&E

11.      Ms. Brown began her relationship with G&E in 2009 through Guttman, by then a director at G&E.  Ms. Brown executed a retainer agreement with G&E, dated October 19, 2009, that set forth the terms of their agreement with respect to the *Celgene* Matter (the "*Celgene* Agreement").  As set forth above, under the terms of the *Celgene* Agreement, G&E

was to represent Ms. Brown on a contingency fee basis and advance the costs of litigation.

The value of the service provided by G&E were deemed to be G&E's awarded fees and costs,

as well as 40 percent of any amount awarded to Ms. Brown as a relator.

12.     As the attorney responsible for the *Celgene* Matter, Guttman drafted the

*Celgene* Agreement.  At the time it was drafted, Guttman knew that Ms. Brown worked for

Celgene in California and that she was a resident of California.  Indeed, Guttman addressed

the *Celgene* Agreement to Ms. Brown at her address in West Covina, California.

13.     G&E, through Guttman, filed the *Celgene* Matter on behalf of Ms. Brown in

federal court in the Central District of California.

14.     While at G&E, Guttman oversaw the *Celgene* Matter, and supervised the work

of attorneys on the case, reviewed and approved all of their activities on the matter, including

compiling and substantiating the hours billed and the expenses incurred therein.

**Guttman Announces his Intention to Depart from G&E**

15.     By early 2015, Guttman's relationship with G&E had soured and he had

announced his intention to leave G&E by the end of the year.  Guttman emailed Jim Sabella,

a fellow director at G&E saying that he had advised the Firm that he would be leaving "by

the end of the year" and did not want to "blind side anyone."  Referring to Traci Buschner,

another G&E lawyer who later joined Guttman at the Guttman Firm, he stated:  "I cannot

speak for Traci but I am 55 and need to move forward and do my now [*sic*] thing."

16.     Confirming that the decision to leave was his own, Guttman wrote to one of

the heads of G&E, Jay Eisenhofer, explaining his decision to resign: "There have been a

number of false starts on my resignation and part of it has been my absolute admiration and

love for you...I would love to joint venture cases with GE but for now I need to do my own

thing."

4

**Guttman Delays his Resignation and Guttman and G&E Agree to a Transition Plan**

17.     In early 2015, after Guttman announced his decision to leave G&E at year end, his relationship with his colleagues, which had previously involved substantial friction, deteriorated even further.

18.     As one example, Guttman berated a staff member by email, accusing him of "lacking substance" and comparing him to "colorless jellow [*sic*] without even the fruit chunkies."  When the same staff member emailed Guttman that he was going to report Guttman's verbal abuse to the Human Resources department, Guttman simply replied with a smile emoji.  Similarly, when a G&E marketing person suggested a cost cutting measure related to a service called Stampa, Reuben responded by threatening the marketing person's job, stating "Let's cut you and save Stampa."

19.     Guttman's abuse of staff and coworkers was palpable.  When emailing a colleague about a press inquiry, Guttman wrote: "It is a fucking embarrassment that you dropped this case! You are a complete asshole!"

20.     Guttman's behavior toward other directors and staff became so abrasive and abusive that even Guttman himself acknowledged that continuing to work with G&E through the end of the year would be impossible.  On April 5, 2015, he wrote: "I have honestly been thinking about it all weekend. I am very much pondering how I can do anything with the firm even on a short term basis."

21.     G&E's management sought to convene a meeting with Guttman, but Guttman initially refused to engage in face-to-face conversations.  Although G&E's management had sought to persuade Guttman to remain at G&E after he had threatened to resign in prior years, on April 14, 2015, G&E's managing directors had a videoconference in which they asked Guttman to leave G&E.

22.     G&E proposed, and Guttman agreed, to engage in an orderly transition regarding his departure, including coordinated notice to G&E personnel and to clients for the *Celgene* Matter and others with respect to their options regarding continued representation. The parties agreed that neither was to contact clients during this transition until Guttman and G&E could agree upon a unified approach.

23.     Because Guttman was at that time immersed in depositions in another matter, he asked G&E to table departure discussions and defer telling clients or non-director personnel about his departure until after the depositions (then scheduled several days later in April) were completed.  Based on the representation that the delay was in the best interests of G&E's clients and necessary to give Guttman time to work out an orderly departure, G&E agreed to give Guttman the time he requested.

24.     G&E, for its part, continued to hold Guttman out as a director, refrained from approaching clients, and paid Guttman his regular draw while awaiting the promised collaboration.  There were ongoing discussions during this period between a representative of G&E and a representative of Guttman regarding the benefit to clients of the continuing involvement of both G&E and Guttman in ongoing matters.

25.     Having induced G&E's inaction in anticipation of a coordinated notice to G&E personnel, clients and third parties, Guttman, while still a director, used the delay he had requested as a means to solicit, unilaterally and surreptitiously, G&E clients, including Ms. Brown, to leave G&E and join him at a new firm that he was creating, which eventually became the Guttman Firm.

**Guttman Abuses G&E's Good Faith to Steal Ms. Brown and the *Celgene* Matter**

26.     G&E was prepared to continue representing Ms. Brown together with Guttman as co-counsel if the parties could reach a fair agreement.  Unfortunately, as set forth below, Guttman had no interest in keeping G&E as co-counsel, but wanted to continue to use G&E as a litigation funding source only – an arrangement that was not acceptable to G&E.

27.     On April 23, 2015, after not hearing further from Guttmann regarding a coordinated approach for an extended period, a G&E attorney set up a phone call with Ms. Brown to encourage her to remain with G&E.  Ms. Brown failed to dial into the conference call, for reasons that soon became apparent.

28.     The next day, on Friday, April 24, 2015 Guttman delivered what purported to be his resignation letter from G&E, and enclosed a letter from Ms. Brown dated Tuesday, April 21, 2015, terminating G&E as her counsel.  Guttman's letter warned G&E not to contact Ms. Brown except through counsel.

29.     Although Guttman sought to prevent G&E from contacting Ms. Brown by claiming that he now represented her, the timing of the termination letter – dated three days before his resignation – led to the inescapable inference that Guttman was engaged in soliciting clients while still serving as a director of G&E and after inducing G&E not to solicit such clients.

30.     Guttman knew that G&E was relying on his promise to act jointly and, knowing that G&E would have no opportunity to insure that the clients were fully informed of their rights, induced clients to leave G&E based solely on his unilateral solicitation.

31.     G&E treated Guttman's resignation as effective immediately.

7

**The Guttman Firm Interferes with the *Celgene* Agreement**

32.    The Bienert firm was local counsel and co-counsel with G&E during the time

G&E represented Ms. Brown.  The Bienert firm continued to represent Ms. Brown at the

time Guttman wrongfully induced Ms. Brown to take the *Celgene* Matter to the Guttman

Firm.

33.    Similarly, the Harpootlian Firm took over representation and litigation funding

for the *Celgene* Matter shortly after Guttman stole the matter from G&E.

34.    Following Guttman's resignation with Ms. Brown in hand, these firms,

through Richard Harpootlian ("Harpootlian"), made a "take it or leave it" ultimatum to G&E

that G&E continue to finance the *Celgene* Matter, but cease performing any substantive

work.  Although G&E was at all times ready and willing to continue substantive

representation of Ms. Brown, it was not willing to act as a funding source alone.  When G&E

so indicated to Harpootlian during a phone call, Harpootlian abruptly hung up.

35.    In the ensuing two-plus years, G&E has repeatedly requested information

concerning the *Celgene* Matter from Guttman and the Guttman Firm, including any request

the Guttman Firm and its co-counsel have made for recoupment of attorney's fees as part of

the prospective settlement of the *Celgene* Matter.  In response, the Guttman Firm, along with

the Bienert and Harpootlian Firms, have refused to provide G&E with this information and

have contended that G&E is not due *any* fees, despite having incurred $7 million in time and

having a fee agreement entitling G&E to 40 percent of Ms. Brown's share.

36.    Defendants and their co-counsel have alleged, *inter alia,* that the *Celgene*

Agreement – which was drafted by Guttman – is invalid under California law and/or that

G&E's time incurred in the *Celgene* Matter was inflated – even though the hours incurred by

members of the *Celgene* team were contemporaneously reviewed and approved by Guttman before his departure.

37.     In so doing, Guttman seeks to benefit himself, the Guttman Firm and his co-counsel at the expense of G&E by obtaining for themselves amounts rightfully accrued by, and due to, G&E, even though Guttman personally drafted the engagement agreement he now challenges, and even though he compiled and oversaw while he was at G&E the allegedly inflated attorney time and even though he owed G&E an obligation to provide it with accurate records upon his departure from the Firm.

38.     Upon information and belief, the Guttman Firm and its co-counsel have requested, or are in the process of requesting, attorney's fees with respect to the settlement of the *Celgene* Matter, but Defendants have refused repeated requests to provide information (even on a confidential basis) to G&E and have instead, upon information and belief, used the fees and expenses incurred by G&E to seek to increase the recovery for themselves under false pretenses.

39.     G&E has demanded that Defendants, as well as Ms. Brown and the other counsel in the case, submit G&E's time and expenses in connection with the settlement of the Celgene Matter so that G&E can obtain its rightful share of the recovery, but Defendants have rebuffed G&E and refused to share information with it.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty against Guttman)

40.     G&E repeats and realleges the allegations in paragraphs 1 through 39 as if fully set forth herein.

9

41.    At all times that Guttman was a director of G&E, he owed it fiduciary obligations to act loyally, honestly and fairly, without self-dealing and with the utmost fidelity in all dealings.

42.    Even after his departure, Guttman owed G&E a duty to, *inter alia*, work to insure that G&E received complete and timely information about cases that he had handled while at G&E, and to take no steps antagonistic to G&E's right to receive its share of fees and expenses incurred while Ms. Brown was a client of the Firm and while Guttman was a director, and to account to G&E.

43.    Guttman breached his duty to G&E, and acted unethically in myriad ways, including: (a) breaking his promise to act jointly with G&E in coordinating his departure, including jointly contacting affected clients like Ms. Brown; (b) surreptitiously soliciting Ms. Brown to leave G&E while still employed as a director; (c) upon information and belief, failing adequately to inform Ms. Brown and other clients of their rights and options with respect to selection of counsel; (d) drafting the *Celgene* Agreement in a manner that, *arguendo*, subjects it to challenge under California law, and then seeking in bad faith to benefit from his own alleged violation of California law in connection with the *Celgene* Agreement to deprive G&E of a fee in order to gain more for himself and the Guttman Firm; (e) refusing to vouch for attorney time on the *Celgene* Matter that he compiled and oversaw while at G&E, again seeking in bad faith to personally benefit by depriving G&E of fees and other amounts justly due and owing; (f) refusing, despite repeated demands, to submit the time and expenses G&E incurred in the Celgene Matter in order intentionally to prejudice G&E and benefit themselves; and (g) categorically refusing to provide G&E with information about the settlement of the *Celgene* Matter.

44.     G&E has been damaged by these breaches, including *inter alia*, by having paid

Guttman for periods during which he was disloyal and engaged in self-dealing; being

deprived of the opportunity to notify clients of their rights and options on the level playing

field agreed to; being deprived of the ability to be paid fairly for the substantial time actually

incurred by G&E lawyers; and being deprived of the ability to keep funds belonging to it safe

and secure.

45.     By reason of the foregoing, Guttman is liable to G&E for damages in an

amount to be determined at trial, but in excess of $7,000,000, plus a pro rata share of the

FCA relator's "bounty" recovered by Ms. Brown.

### SECOND CLAIM FOR RELIEF
### (Tortious Interference against Guttman and the Guttman Firm)

46.     G&E repeats and realleges the allegations in paragraphs 1 through 45 as if

fully set forth herein.

47.     Guttman and the Guttman Firm were aware of G&E's attorney-client

relationship with Ms. Brown, and its ongoing relationship with its co-counsel.

48.     Despite this knowledge, Guttman and the Guttman Firm tortiously interfered

with G&E's business relationships by soliciting Ms. Brown while Guttman was still a

director of G&E.

49.     These actions were designed to enable Guttman and the Guttman Firm to

obtain property rightfully belonging to G&E.

50.     As a direct and proximate result of the conduct alleged above, G&E has

sustained and incurred further damages in excess of $7,000,000, which continue to accrue,

including but not limited to damages reflecting lost business, lost profits, a pro rata share of

the FCA relator's "bounty" to be recovered by Ms. Brown and damage to its goodwill in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment against Guttman and the Guttman Firm)

51.     G&E repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth herein.

52.     G&E expended substantial time, energy and money as part of its work as Ms. Brown's counsel in the *Celgene* Matter.  G&E did so with the expectation that they would be paid for their work.

53.     As current counsel to Ms. Brown, Guttman and the Guttman Firm have requested, or are in the process of requesting, for themselves the attorney's fees to which G&E would otherwise be entitled, but Defendants have refused to pay any portion of these fees to G&E.

54.     In claiming that G&E is not entitled to its fair share of fees and other compensation in the *Celgene* Matter and refusing to provide information to G&E, Guttman and the Guttman Firm seek to profit from the time, effort and funds expended by G&E and to take profits from the *Celgene* Matter that properly belong to G&E.

55.     Accordingly, Guttman and the Guttman Firm would be unjustly enriched by their retention of attorney's fees and other compensation in the *Celgene* Matter belonging to G&E, and it would be inequitable to allow Guttman and the Guttman Firm to retain those fees.

56.     As a direct and proximate result of the conduct alleged above, G&E has sustained and incurred further damages in excess of $7,000,000, reflecting the value of its work, plus a pro rata share of the FCA relator's "bounty" recovered by Ms. Brown.

12

## FOURTH CLAIM FOR RELIEF
### (Constructive Trust against Guttman and the Guttman Firm)

57.     G&E repeats and realleges the allegations in paragraphs 1 through 56 as if fully set forth herein.

58.     Guttman and the Guttman Firm owed G&E a duty not to improperly solicit Ms. Brown and other clients, to advise G&E regarding its right and entitlement to fees and other compensation arising from a settlement or verdict in matters that Guttman worked on while at G&E, but which he took with him to the Guttman Firm, and to act faithfully and honestly with respect thereto.

59.     These Defendants also owed G&E a duty to account with respect to the resolution of the *Celgene* Matter.

60.     Pursuant to these duties, Defendants were obliged to protect and preserve any fees or other compensation in the *Celgene* Matter that properly belong to G&E, but which have come in to Defendants' possession, custody, or control.

61.     By deceitfully seeking to obtain, and retaining for themselves, fees and other compensation fairly due to G&E, Defendants improperly favor themselves.

62.     In equity, all funds paid to Guttman and the Guttman Firm in the *Celgene* Matter should be held on behalf of G&E and this Court should impose a constructive trust for G&E's benefit in an amount to be determined at trial, but not less than $7,000,000, plus a pro rata share of the FCA relator's "bounty" to be recovered by Ms. Brown.

## PRAYER FOR RELIEF

WHEREFORE, G&E prays that the Court enter judgment in its favor and against each Defendant, containing the following relief:

(a)     On the First Claim, damages in an amount to be determined at trial;

(b)     On the Second Claim, damages in an amount to be determined at trial;

(c)     On the Third Claim, damages in an amount to be determined at trial;

(d)     On the Fourth Claim, the imposition of a constructive trust in an amount to be

determined at trial;

(e)     An accounting with respect to the *Celgene* Matter.

(f)     An award of costs that Plaintiff has incurred in this action, including, but not

limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and

costs to the fullest extent permitted by law; and

(g)     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

For all issues that may be tried to a jury, Plaintiff respectfully demands a jury trial.


Dated:  August 24, 2017                        Respectfully submitted,

                                               /s/John B. Harris
                                               John B. Harris
                                               Nicole Bergstrom
                                               FRANKFURT KURNIT KLEIN & SELZ, P.C.
                                               488 Madison Avenue
                                               New York, NY  10022
                                               Email:  jharris@fkks.com
                                               Email:  nbergstrom@fkks.com
                                               Telephone:  (212) 980-0120
                                               Facsimile:  (212)593-9175

                                               /s/Paul L. Knight
                                               Paul L. Knight (D.C. Bar No. 911594)
                                               Nossaman LLP
                                               1666 K Street, N.W., Suite 500
                                               Washington, DC  20006
                                               Email: pknight@nossaman.com
                                               Telephone:  (202) 887-1400
                                               Facsimile:  (202) 466-3215

                                               *Attorneys for Plaintiff Grant & Eisenhofer P.A.*